CHARLES A. BONNER, ESQ.  SB# 85413
A. CABRAL BONNER, ESQ. SB# 247528
LAW OFFICES OF BONNER & BONNER
475 GATE FIVE RD., SUITE 211
SAUSALITO, CA 94965
TEL: (415) 331-3070
FAX: (415) 331-2738
cbonner799@aol.com
cabral@bonnerlaw.com

JAMES M. JOHNSTON, ESQ.  SB# 229811
JOHNSON TRIAL LAW
100 WILSHIRE BLVD. SUITE 700
SANTA MONICA, CA 90401
TEL: (424)-272-6680
james@johnsontrial.com

ATTORNEYS FOR PLAINTIFF KIMBERLY BRYANT

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| KIMBERLY BRYANT, an individual;<br><br>**Plaintiff,**<br><br>vs.<br><br>BLACK GIRLS CODE, a California Non-Profit Public Benefit Corporation; HEATHER HILES, *in Her Individual Capacity,* STACY BROWN-PHILPOT, *in Her Individual Capacity,* SHERMAN WHITES, *in His Individual Capacity,* SOFIA MOHAMMED; *in Her Individual Capacity,* WELLS FARGO & COMPANY, CHARLES W. SCHARF, *in His Individual Capacity,* MICHAEL P. SANTOMASSIMO *in His Individual Capacity,* and DOES 1-50, inclusive.<br><br>**Defendants.** | Case No.<br><br>**COMPLAINT FOR DAMAGES/ORDER TO SHOW CAUSE:**<br><br>**(1) BREACH OF FIDUCIARY DUTIES AGAINST DEFENDANTS**<br>**(2) BREACH OF CHARITABLE TRUST;**<br>**(3) NEGLIGENCE**<br>**(4) VIOLATION OF RIGHT TO FINANCIAL PRIVACY ACT**<br>**(5) INVASION OF PRIVACY VIOLATION OF CALIFORNIA CONSTITUTION ART. I, § 1**<br>**(6)  WHISTLEBLOWER LIABILITY VIOLATION OF CALIFORNIA LABOR CODE § 1102.5**<br>**(7) NEGLIGENCE**<br>**(8) NEGLIGENCE PER SE**<br>**(9) INTRUSION UPON SECLUSION**<br>**(10) CONSPIRACY**<br>**(11) TORTIOUS INTERFERENCE WITH BUSINESS PROSPECTIVE**<br>**(12) TORTIOUS INFERENCE WITH BUSINESS ADVANTAGE**<br>**(13) DEFAMATION**<br>**(14) INJUNCTION/OSC**<br><br>**PUNITIVE DAMAGES** |

Plaintiff Kimberly Bryant alleges as follows:

## INTRODUCTION

1.      Defendants, and each of them, conspired to take over Plaintiff Kimberly Bryant's non-profit corporation, Black Girls Code, that she founded in 2011. Defendants have wrongfully removed and excluded Ms. Bryant from Black Girls Code, and wrongfully transferred to themselves her Wells Fargo bank accounts without her consent and over her objection. Defendants' fraudulent and illegal acts and conduct has caused, and continue to cause Ms. Bryant irreparable injury, damage, and harm where money damages are an inadequate remedy.  Hence, Ms. Bryant respectfully moves this Court by an order to show cause seeking injunctive relief in order to prevent the continuance of irreparable injury, damage and harm.

## PARTIES

2.      Plaintiff Kimberly Bryant ("BRYANT" or "Plaintiff") is the founder, Chief Executive Officer, and member of the Board of Directors of Defendant BLACK GIRLS CODE ("BGC"), a California non-profit corporation. BRYANT created BGC's concept and vision and funded its startup from her own 401K in 2011.

3.      On behalf of the People of California, Attorney General Rob Bonta is charged with the primary responsibility of ensuring that charitable trusts and public benefit corporations, "compl[y] with [their] trusts and articles of incorporation, and for protecting assets held by charitable trusts and public benefit corporations." (Gov. Code, § 12598.) In the name of the People, the Attorney General is authorized to enforce the provisions of the Supervision of Trustees and Fundraisers for Charitable Purposes Act (Gov. Code, § 12580 et. seq.), the Nonprofit Corporation Law (Corp. Code, § 5000 et seq.), and those provisions of the Business and Professions Code that prohibit unlawful, unfair, and fraudulent business practices (Bus. & Prof. Code. § 17200 et seq.). On or about January 11, 2022, Attorney General Bonta was informed of BRYANT's intention to file her initial Complaint and is now hereby requested to this action as an indispensable party pursuant to Corporations Code Section 5233.

## DEFENDANTS

4.      Defendant BGC is, and at all relevant times, was a California non-profit public benefit corporation organized under the laws of the State of California and according to its filings with the California Secretary of State, designates Oakland, California as its principal place of business. BGC was

formed to provide technical education and training in computer programming and technology for disadvantaged and underserved inner city young girls. BGC has chapters in 16 cities, and its programming has reached more than 30,000 participants.

5.     Defendant HEATHER HILES ("HILES") is a resident of the State of Florida and is a member of BGC's Board of Directors. She currently serves as the Treasurer and Interim Chair of the Board. At all times relevant HILES owed a fiduciary duty of care and loyalty to BGC and its charitable beneficiaries. Individually and with others, HILES has formulated, directed, controlled, and/or participated in the acts and practices of BGC as set forth herein.

6.     Defendant STACY BROWN-PHILPOT ("BROWN-PHILPOT") is a resident of the State of California and is a member of BGC's Board of Directors. At all relevant times, BROWN-PHILPOT owed a fiduciary duty of care and loyalty to BGC and its charitable beneficiaries. Individually and with others, BROWN-PHILPOT has formulated, directed, controlled, and/or participated in the acts and practices of BGC as set forth herein.

7.     Defendant SHERMAN WHITES ("WHITES") is a resident of the State of Missouri and is a member of BGC's Board of Directors. At all relevant times, WHITES owed a fiduciary duty of care and loyalty to BGC and its charitable beneficiaries. Individually and with others, WHITES has formulated, directed, controlled, and/or participated in the acts and practices of BGC as set forth herein.

8.     Defendant SOFIA MOHAMMED is a resident of the State of Mississippi. At all times relevant times, MOHAMMED was wrongfully appointed by Defendant Heather HILES as the CEO of BGC and owed a fiduciary duty of care and loyalty to BGC and its charitable beneficiaries. Individually and with others, MOHAMMED has formulated, directed, controlled, and/or participated in the acts and practices of BGC as set forth herein.

9.     BLACK GIRLS CODE, a California non-profit public benefit corporation; HEATHER HILES, an individual; STACY BROWN-PHILPOT, an individual, SHERMAN WHITES, and SOFIA MOHAMMED an individual, and DOES 1 through 50 are sometimes referred to herein as the "Black Girls Code Defendants."

10.    Defendant WELLS FARGO & COMPANY ("WELLS FARGO") is a Delaware corporation with principal executive offices located at 420 Montgomery Street, San Francisco, California 94104. Wells Fargo's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under

the trading symbol "WFC".

11.     Defendant CHARLES W. SCHARF ("SCHARF") has served as Wells Fargo's Chief Executive Officer and President at all relevant times.

12.     Defendant MICHAEL P. SANTOMASSIMO ("SANTOMASSIMO") has served as Wells Fargo's Senior Executive Vice President ("EVP") and Chief Financial Officer at all relevant times.

13.     Defendant KLEBER R. SANTOS ("SANTOS") has served as Wells Fargo's Senior Executive Vice President ("EVP") and Chief Financial Officer at all relevant times.

14.     Defendants WELLS FARGO, SCHARF, and SANTOMASSIMO are sometimes referred to herein as the "WELLS FARGO DEFENDANTS."

15.     WELLS FARGO is an "insured depository institution" as that term is defined in 12U.S.C. § 1813(c)(2). The bank is a "national banking association" within the meaning of 12 U.S.C. § 1813(q)(1)(A).

16.     WELLS FARGO is a diversified financial services company that provides banking, investment, mortgage, and consumer and commercial finance products and services in the U.S. and internationally. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

17.     Plaintiff is unaware of the true names and capacities of the defendants sued as DOES 1 through 50, inclusive, and therefore Plaintiff sues those defendants by fictitious names under section 474 of the California Code of Civil Procedure. Plaintiff will seek leave of the Court to amend this Complaint to allege the true names and capacities of DOES 1 through 50, inclusive, when the true names and capacities are ascertained. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants named in this Complaint as DOES 1 through 50, inclusive, is responsible in some manner for the occurrence, injury, and other damages alleged in this Complaint.

18.     Plaintiff alleges that at all relevant times each named and unnamed defendant was the agent and/or employee of the other defendant, and at all times each defendant was and is acting within the purpose and scope of such agency and/or employment and with the permission and consent of his/her/its defendants and with knowledge, authorization, permission, consent, and/or subsequent ratification and approval of each defendant. Plaintiff further alleges that each named and unnamed defendant knowingly

and willfully conspired and agreed among themselves to deprive Plaintiff of her rights and to cause the damages described below.

19.   BGC, HILES, BROWN-PHILPOT, WHITES, and DOES 1 through 50 are sometimes referred to herein collectively as "Black Girls Defendants."

## JURISDICTION AND VENUE

20.   Jurisdiction and venue are proper in the Superior Court of California, County of Alameda because: (i) at all relevant times herein Defendants and each of them transacted business in the County of Alameda and elsewhere in the State of California; (ii) the violations of law hereinafter descried have been and are now being carried out, in part, within and from said county and throughout the State of California.

21.   This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act. Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).

22.   Wells Fargo is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' activities took place within this Judicial District Whenever reference is made in this Complaint to any act of any corporate or other business defendant, such allegation shall mean that said defendant, and its owners, officers, directors, agents, employees, or representatives did or authorized such acts while engaged in the management, direction, or control of the affairs of Defendants and while acting within the scope and course of their duties, unless otherwise alleged.

23.   Whenever reference is made in this Complaint to any act of any individual defendant, such allegation shall be deemed to mean that said defendant is and was acting (a) as a principal, (b) under express or implied agency, and/or (c) with actual or ostensible authority to perform acts so alleged on behalf of every other defendant.

24.   BGC, its executive officers and members of the Board of Directors are governed by the BGC Bylaws, duly adopted on February 8, 2017 (the "Bylaws"). A true copy of the Bylaws is attached as **Exhibit "1"** to this Complaint.

25.   Members of the BGC Board of Directors are also bound by a "Board Member Agreement," which each member has executed acknowledging the shared responsibilities of the Board and the conduct

expected of all Board members.

## BLACK GIRLS CODE DEFENDANTS' FACTS AND CLAIMS

### BGC Thrives on Substantial Donations

26.     Since approximately 2011, BRYANT has spearheaded efforts to provide access to technology and technological training to underprivileged girls of color through BGC. BRYANT, who initially funded BGC from her own 401K account, is an electrical engineer who has led and served as BGC's CEO since its formation. Under BRYANT's leadership, BGC has provided over 30,000 young women with access to skills in computer programming and technology through CODE classes taught by over 4,000 volunteers. BRYANT has been at the forefront of the movement to open the doors of the 'tech' world to Black girls who have long been left out of that industry. BRYANT is a respected thought leader and one of the less than 1% women of color who lead nonprofit organizations in the area of tech education and/or other ecosystems. She is a respected global and Silicon Valley leader, who has dedicated herself to the founding, growth, and expansion of Black Girls CODE from a single chapter in the Bay Area to 15 chapters in major cities across the US and South Africa, including a second headquarters in New York City sponsored by Google.

27.     BGC as an organization has grown from a grass-roots level non-profit organization receiving approximately $1,500,000 in donations through 2019, to a rapidly expanding organization receiving more than $30,000,000 in funding by the close of 2021. During the pandemic, BRYANT led BGC through an unprecedented shift to virtual programming that allowed the organization's student reach to expand exponentially. This resulted in BGC reaching over 10,000 students in 2020 alone, while doubling its staff and experiencing a 1,000 percent increase in revenue. BGC is now an internationally recognized non-profit due to the generous gifts of the public and due to strategic corporate partnerships, which have positioned BGC for continued growth in external partnerships and revenue in 2022.

HILES Takes an Interest in BGC for her Personal Benefit

28.     Concurrent with the success and notoriety that BGC obtained on account of the influx of generous funding and donations through 2021, HILES took a keener interest and a more active role on BGC's Board. Unbeknownst to BGC and BRYANT, HILES was eager to salvage her professional reputation. HILES, the first President of Calbright College, was forced to resigned by the Calbright board in 2020 following the failure of Calbright's first state audit. Following her resignation, HILES sought to defend

her reputation by candidly admitting that "[i]t is easy to blame the founding CEO for everything..."

29.     Following BGC's exponential increase in donations, HILES became more active in her role as a director. Upon information and belief, BRYANT alleges that HILES sought to capitalize on BGC's growth and increased funding for her own personal gain. BRYANT is informed and believes that since approximately September of 2020, HILES has been a director at Udemy, a global marketplace for learning and online education. In connection with preparing for Udemy's Initial Public Offering ("IPO"), HILES attempted to arrange a partnership between BGC and Udemy. BRYANT repeatedly warned HILES and subsequently BROWN-PHILPOT of the impropriety of HILES' attempt to arrange a partnership between BGC and Udemy and further objected to HILES' nomination as BGC's interim chair on account of HILES' conduct in this regard and her concurrent role at the time as board treasurer.

30.     BRYANT further alleges on information and belief that HILES intentionally impeded BGC's establishment of a $20,000,000 endowment which was fully approved by the Board. Although the endowment could have been implemented by the late winter or early fall of 2021, HILES had unilaterally impeded the establishment of the endowment. As both acting Treasurer and interim Chair of the Board, HILES refused to follow through with the Board's June 2021 Resolution to fund the endowment without performing her own personal due diligence of one of the selected investment firms. BRYANT alleges on information and belief that the purpose of the delay is because HILES intendeds to divert the endowment funds to a venture capital firm with which HILES has a personal financial interest as a managing partner.

**HILES Uses Employee Resignations to Oust BRYANT**

31.     Over the summer months of 2021, three employees of BGC resigned and expressed concerns over BGC's workplace culture. In response to the resignations, BRYANT, in July of 2021, immediately convened a meeting of the Board of Directors to discuss the concerns raised by the employees who had resigned.

32.     At the meeting BRYANT proposed that BGC take immediate action to improve BGC's workplace culture. BRYANT proposed that BGC begin taking steps to evaluate and improve its workplace environment, including the hiring of a cultural consultant and a Chief Strategy Officer to improve BGC's efforts moving forward. On or about October of 2021, BGC did in-fact hire Karla Monterroso, the former CEO of the racial equity non-profit Code2040, as a special consultant to evaluate

the inner workings of BGC. BRYANT also met with Edgility Consulting to launch an initiative to improve staff compensation and to provide coaching and mentorship to the senior leadership team.

33.     At the same meeting, BRYANT was notified by HILES, that HILES had already independently consulted with the employees who had resigned. HILES, who as a Board member and pursuant to BGC's internal policies, was neither tasked nor permitted to speak with resigned personnel. Despite going ahead and speaking with them, HILES refused to reveal the specifics of her conversations but instead, turned her attention on BRYANT by disparaging her character and attacking her ability to lead BGC., the entirety of which was recorded.

34.     During the meeting HILES was admonished for her conduct, and the Board agreed that it would explore the potential of hiring an independent investigator to conduct an employee survey. Thereafter BRYANT met with Board members, including former Board Chair Dr. Stephanie Adams, to discuss the personnel issues raised by the July 2021 resignations. At that time, BRYANT and Dr. Adams agreed that the issues presented by the resignations did not warrant involvement of legal counsel, but that BGC should still conduct the staff survey as previously discussed.

35.     On or about July 28, 2021 an additional meeting of the Board of Directors was held. At that meeting Dr. Adams, as Chair of the Board, announced that with respect to the resignations, she had not found any issues within the organization that warranted further intervention or action by the Board nor the necessity for involving legal counsel. Dr. Adams further stated that BGC would still move forward and proceed with the cultural evaluation and would act to address some of the concerns that were raised. HILES and BROWN-PHILPOT, however, raised strong opposition to the decision made by Dr. Adams and requested that the Board meet anew to discuss the issues.

36.     On or about September 22, 2021, Dr. Adams resigned from her role as Board Chair on the BGC Board of Directors, leaving that Board seat vacant. On information and belief, BRYANT alleges that HILES began aggressively campaigning to succeed Dr. Adams as Board Chair, although HILES as acting Treasurer, could not hold both positions simultaneously pursuant to BGC's bylaws.

37.     On or about September 28, 2021, BRYANT received a memorandum purportedly from the BGC Board, requesting immediate information from BGC's legal counsel as to the insurance policies provided for BGC's Directors and Officers, as well as clarification of the official communications between BGC and the employees that had resigned in July, 2021. BRYANT responded that pursuant to the bylaws, a

formal meeting was required on the issues raised and that (1) Loeb & Loeb, LLP was BGC's legal counsel, (2) BRYANT would provide the insurance policy requested, and (3) it had already been determined that the employee resignations did not warrant the involvement of legal counsel. BRYANT further requested a formal meeting of the Board to elect a new Board Chair, which was vacant due to the resignation of Dr. Adams.

38. On or about October 5, 2021, a special board meeting was held and over the strenuous objections of BRYANT, HILES was elected interim Board Chair. Now serving unlawfully as both BGC's Treasurer and Chair of the Board, HILES has indicated that she was going to create a "Special Committee" comprised of HILES, BROWN-PHILPOT, and WHITES. No vote was taken on the creation of a Special Committee during the October 5, 2021 meeting.

39. BRYANT alleges upon information and belief that at some point on or about October of 2021, the Board held a meeting in violation of the bylaws that specifically excluded BRYANT, who as CEO, had been serving as the Board's President. At that October 2021 meeting, a "Special Committee" was formed consisting of Defendants, HILES, BROWN-PHILPOT, and WHITES, with the express purpose of looking into employment and human resources matters. It was understood that the Special Committee would report back to the Board of Directors with its findings and recommendations. BRYANT further alleges that, prior to the secret meeting concerning the formation of the Special Committee, HILES had independently consulted with an attorney from the law firm DLA Piper, who was in attendance at the meeting. BRYANT was later notified that the Special Committee, on behalf of BGC, had retained DLA Piper, to analyze the structure of the Board of Directors and provide legal counsel on "employment related issues." BRYANT was not notified that DLA Piper was tasked with an investigation into any alleged misconduct on BRYANT's part.

40. Around the time of the formation of the Special Committee in October of 2021, BRYANT had formally requested that HILES be investigated for workplace misconduct in connection with a meeting of the Board of Directors on July 2, 2021. During the July 2, 2021 Board meeting, HILES verbally assaulted BRYANT. On account of BRYANT's attempt to thwart HILES from engaging in self-dealing, as well as HILES threatening remarks to BRYANT, significant tension arose between HILES and BRYANT. BRYANT alleges on information and belief that the Special Committee did not investigate HILES's conduct at the July 2, 2021 Board meeting, as HILES, who spearheaded the Special Committee,

1  was not about to investigate herself.

2  41.     Up until December 8, 2021 when HILES directly contacted BRYANT's Chief of Staff and

3  demanded that certain employee personnel information be immediately provided to HILES, BRYANT

4  had no communication with the Special Committee, nor with any attorney from DLA Piper or any

5  "investigator" retained through the Special Committee. After receiving HILES demand, BRYANT

6  informed HILES that she needed to speak with BGC counsel as to the impacts of sharing personnel

7  information before turning over the requested information. At that time, BRYANT had sought to engage

8  outside counsel to look into the matter of the legalities of providing confidential personnel files to the

9  Special Committee. The legal counsel that BRYANT had contacted was out of the country and

10  unreachable.

11  42.     After confirming the availability of all Board members, a Board meeting had been set for

12  December 20, 2021 to approve BGC's 2022 budget. Leading up to the December 20, 2021 meeting,

13  HILES attempted to cancel the meeting, including up until the morning of December 20, 2021.

14  **BRYANT is Removed as CEO Without a Vote of the Board**

15  43.     On or about December 20, 2021, a regular meeting of the Board of Directors was held. BRYANT,

16  HILES and other members of the Board were in attendance. Following the meeting, HILES requested to

17  meet privately with BRYANT. BRYANT informed HILES that she could not meet at that time due to a

18  number of pre-existing obligations, but offered to meet after the holidays when she had more availability.

19  When HILES attempted to follow up with BRYANT's assistant to schedule a further meeting, HILES

20  insisted that BRYANT meet alone with all three members of the Special Committee (HILES, BROWN-

21  PHILPOT, and WHITES). BRYANT responded and indicated that she was not comfortable meeting

22  alone with the Special Committee without BGC's counsel. BRYANT further indicated that her meeting

23  with counsel was scheduled for Tuesday, December 21, 2021 although she was uncertain that she would

24  be able to contact counsel that day to call in for a meeting with the Special Committee. BRYANT

25  suggested that the meeting be rescheduled in January 2022 after the holiday season.

26  44.     On or about the morning of December 21, 2021, BRYANT's corporate email and access to

27  BGC's internal portals was disabled. Later in the afternoon, around 4:00 p.m., BRYANT received a

28  letter from HILES via BRYANT's personal email account, notifying her that she had been placed on

indefinite suspension as BGC's CEO. A copy of the December 21, 2021 letter is attached to this

Complaint as "Exhibit 2." The December 21, 2021 letter states that "[t]he Board of Directors have been made aware of serious allegations that involve you and we are attempting to conduct a thorough and robust investigation into those allegations. You have conducted yourself in a manner so as to disrupt and impede the ongoing investigation." The December 21, 2021 letter further notified BRYANT that Sofia Mohammed was named the interim Executive Director of BGC, and that "Counsel will reach out to you regarding the ongoing investigation, which you are required to cooperate with as an employee of BGC."

45.    In addition to being stripped of both her email and the ability to access corporate documents, BRYANT was also locked out of the BGC premises. BRYANT attempted to contact Sofia Mohammed but received no response. BRYANT attempted to contact her Chief of Staff, but BRYANT was informed that HILES had ordered a gag-order on all BGC personnel from communicating with BRYANT even before BRYANT was notified of her suspension BRYANT later learned that HILES had threatened to terminate the employment of any BGC personnel for communicating with BRYANT in any manner.

46.    BRYANT alleges upon information and belief that the termination of access to BGC email, internal documents, and BGC's premises is a calculated attempt by HILES to thwart BRYANT from making any attempt to affirmatively show and prove HILES' prior attempts at self-dealing, as well as showing that BROWN-PHILPOT was fully aware of HILES intention. BRYANT further alleges upon information and belief that she was kept from accessing email and corporate documents to keep BRYANT from communicating with BGC's counsel about her upcoming meeting with the Special Committee, and ultimately about her suspension.

47.    To date, BRYANT has not been contacted by BGC's legal counsel, Loeb & Loeb, LLP concerning the status of an investigation into BRYANT's alleged misconduct. Although BRYANT was contacted by Loeb & Loeb following the publication of BRYANT's suspension from BGC in the media, counsel was apparently unaware that the BGC Board had taken any action to remove BRYANT as CEO and/or that the Board had authorized any investigation into BRYANT's alleged misconduct.

48.    BRYANT later learned, and alleges upon information and belief, that the BGC Board was unaware of any alleged misconduct by BRYANT prior to her suspension, and that the Special Committee, who was solely tasked with investigating various employment and HR issues, did not communicate **any** of its findings with the Board. Nor did the BGC meet, discuss, or otherwise vote to remove BRYANT from her role as CEO. In fact, BRYANT's suspension was a complete surprise to

11

1  some Board members, who also learned of BRYANT's suspension only after the news was made public.

2  49.     BRYANT alleges on information and belief that the alleged "investigation" by BGC and the

3  Special Committee is an unsubstantiated, untruthful and disingenuous pretext spearheaded by HILES to

4  have BRYANT removed as CEO in order for HILES to obtain further control over the BGC operations

5  in order to implement her personal agenda, including additional acts of self-dealing as alleged previously

6  herein.

7  50.     BRYANT further alleges on information and belief that Defendants' HILES, BROWN-

8  PHILPOT, and WHITES have, under the guise of the "Special Committee,' acted independently of the

9  Board of Directors in order to (1) suspend BRYANT and prohibit her from accessing company records

10  and information (despite being otherwise entitled to as a matter of law), (2) keep BRYANT from

11  communicating with BGC's counsel, and (3) to conduct an unauthorized investigation concerning

12  BRYANT's alleged misconduct in an attempt to justify the removal of BRYANT as BGC's CEO.

13  51.     On or about January 10, 2021, BRYANT sent correspondence to BGC and the BGC Board,

14  apprising them of the allegations contained in this Complaint, as well as a draft copy of the instant

15  Complaint to ensure that BGC was on notice of all material allegations alleged herein as required by

16  Corporations Code Section 5710 et seq. The correspondence sent to the Board was issued in response to

17  correspondence that BRYANT received from BGC, dated January 7, 2021, which insufficiently

18  responded to BRYANT's December 28, 2021 correspondence to the Board. In BRYANT's January 10,

19  2021 correspondence to BGC, BRYANT did not demand the relief requested in the instant Complaint,

20  due to BGC's unwillingness to respond in good faith to BRYANT's correspondence with BGC dated

21  December 28, 2021, which in part, demanded that BRYANT be provided with documents pursuant to

22  Corporations Code Section 6334 and that BRYANT's company email access be immediately restored.

23  **BGC Publicly Defames BRYANT**

24  52.     Following BRYANT's suspension, BGC has consistently repeated false, disparaging, and

25  defamatory statements concerning BRYANT's alleged misconduct in the public forum. Once the news

26  about BRYANT's suspension was made public, national news sources sought comment from BGC.

27  53.     BGC has repeatedly set forth a false narrative that BRYANT is being investigated for "serious

28  allegation(s)" of misconduct. For example, when asked for comment from the news outlet Business

Insider, the BGC Board emailed a statement which stated in part, that Bryant is still a BGC staff member

but that "serious allegations of workplace impropriety are being investigated." In a separate statement to Business Insider, BROWN-PHILPOT stated that the Board was investigating "serious allegations of workplace impropriety."

54.     In addition, on or about December 24, 2021 the Special Committee (and <u>not</u> the entire Board of Directors of BGC) released a public statement to BGC's partners and donors purporting to explain the circumstances surrounding BRYANT's suspension ("Special Committee Statement".) The Special Committee Statement reads: "Earlier this year, the Board received or became aware of concerns raised by current and former employees about Ms. Bryant's conduct. On or about October 5, the Board formed the Special Committee to review and evaluate the complaints and determine what, if any, action should be taken with respect to these concerns." The Special Committee Statement was issued and signed by HILES. A copy of the Special Committee Statement is attached hereto as **Exhibit "3."**

55.     After obtaining legal counsel, BRYANT issued a demand letter to BGC's counsel dated December 28, 2021 ("Demand Letter"), concerning the events leading up to BRYANT's suspension. The Demand Letter, among other things, demanded that BGC produce all documents to which BRYANT is entitled pursuant to Corporations Code Section 6334. The Demand Letter further demanded that BRYANT be immediately reinstated as CEO and that BGC refrain from further defamatory and disparaging public comment regarding the purported investigation into BRYANT's alleged misconduct that never occurred. To date, BGC has failed to provide the records to which BRYANT is entitled to as a matter of law, and has otherwise failed to reinstate her access to emails and organizational documents.

56.     As a result of the suspension of BRYANT and public comments made by various representatives of BGC, BRYANT has been unable to receive any speaking engagements despite being a prominent public speaker who has regularly appeared at private speaking engagements at least twenty (20) times per year.

57.     At the time of BRYANT's suspension, BRYANT had also been interviewed and was a finalist to be named as a director for a for-profit corporation. As a result of BGC's unlawful suspension, BRYANT is informed and believes that she is no longer a candidate for that director position.

**HILES Continues to Act Without Board Approval**

58.     Less than two weeks following BRYANT's wrongful suspension from BGC, HILES continued to act on BGC's behalf without obtaining appropriate approval from the BGC Board. On information

1  and belief, HILES, purportedly under the authority of the Special Committee, began a campaign of

2  unilaterally providing various BGC employees promotions and salary increases in an attempt to gain

3  favor with BGC employees in light of the current dispute with BRYANT.

4  59.    BRYANT alleges on information and belief that HILES unilaterally increased the salary of

5  BGC's interim Executive Director Sofia Mohammed, a program director with only three months tenure

6  and no non-profit or executive experience, to exceed that of BRYANT as CEO of BGC, which

7  unequivocally demonstrates that HILES and BGC intend to remove BRYANT as CEO regardless of the

8  findings of the purported investigation. BRYANT further alleges that HILES has promoted employees

9  to the level of "Director" and has endeavored to drive hiring decisions for organizational personnel on

10  her sole authority and approval in contravention of BGC's institutional policies and the Bylaws.

11  
12  
### FIRST CAUSE OF ACTION
### BREACH OF FIDUCIARY DUTIES
### (Against Defendants)

13  60.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in

14  full in this cause of action.

15  61.    Under Government Code Sections 12582 and 12582.1, BGC is a nonprofit public benefit

16  corporation whose assets are held in a charitable trust to be used for charitable purposes identified in its

17  founding documents. BGC's directors owe fiduciary duties of loyalty, care, and good faith in their

18  dealings with BGC, and to ensure that BGC complies with all applicable laws as required under the

19  Supervision Act and the California Corporations Code. Defendants breached their duties of care and

20  loyalty to BGC by engaging in, participating in, aiding and abetting, and facilitating the unlawful actions,

21  or omissions, detailed herein.

22  62.    Defendants specifically owe fiduciary duties of care, loyalty, and good faith to BGC. Said

23  fiduciary duties include obligations to exercise good business judgment, to act prudently in the operation

24  of BGC's business, to discharge their actions in good faith, to act in the best interests of BGC, and to put

25  the interests of BGC before their own.

26  63.    Defendants breached their duty of care by, among other things, failing to act in accordance with

27  BGC's bylaws and applicable corporate law. Defendants failed to act in good faith, failed to act in BGC's

28  best interests, and failed to use due care as required under Corporations Code Section 5231.

64.     Defendants' HILES and BROWN-PHILPOT further breached their duty of loyalty and good faith by, among other things, intentionally causing misrepresentations of fact to be disseminated to the public whose purpose is to elevate themselves in their roles as BGC's Board members to the detriment of BGC.

65.     The acts as alleged in this cause of action were willful, wanton, malicious, and oppressive and were undertaken with the intent to injure BGC's charitable beneficiaries and donors and thus justify the award of exemplary and punitive damages against all Defendants, except BGC.

## SECOND CAUSE OF ACTION
### BREACH OF CHARITABLE TRUST
#### (Against all Defendants)

66.     BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this cause of action.

67.     As a public benefit corporation, BGC holds all of its funds and other assets in trust for charitable purposes. BGC's property is irrevocably dedicated to charitable purposes and no part of the net income or assets may inure to the benefit of any director, officer, member, or private person. Pursuant to Corporations Code section 5142, BRYANT and/or the Attorney General may seek to enjoin, correct, obtain damages for or to otherwise remedy a breach of a charitable trust.

68.     BGC, through HILES, sought to distribute funds received through charitable contributions on behalf of its charitable beneficiaries by offering promotions and salary increases to BGC employees without first acquiring the required approval of the Board of Directors in violation of BGC's bylaws and applicable law. Upon receiving charitable donations, the Board of a charitable trust has a fiduciary duty to ensure that the donations were only to be used for the purposes stated in its bylaws. (Bus. & Prof. Code, § 17510.8.) As stated herein, Defendants' breached their fiduciary duties by utilizing these donations in violation of BGC's Bylaws and applicable California law, including but not limited to, the unauthorized increase(s) in salary to employees and other payroll modifications.

## THIRD CAUSE OF ACTION
### NEGLIGENCE
#### (Against BGC, HILES, BROWN-PHILPOT, WHITES, and Does 1-50)

69.     BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this cause of action.

70.     At all relevant times Officer/Director Defendants voluntarily undertook the duties and responsibilities of directors and/or officers of BGC without being formally elected or otherwise appointed pursuant to the protocols required under BGC Bylaws. Nevertheless, the voluntary undertaking of these duties and responsibilities created a duty on the part of these Defendants to exercise due care in the performance of those duties and responsibilities.

71.     The Officer/Director Defendants, including HILES, BROWN-PHILPOT, WHITES, and Does 1-50 breached the duty of care they owed to BGC by committing the actions and omissions set forth above, and committing other actions and omissions of which BRYANT is currently unaware.

72.     BRYANT is informed and believes and thereon alleges that, as a proximate result of the breach of the duty of care which the Officer/Director Defendants, including HILES, BROWN-PHILPOT, WHITES, and Does 1-50 legally owed to BGC, including but not limited to, the unauthorized increase(s) in salary to employees and other payroll modifications, charitable assets have been improperly diverted from BGC. BGC and the public beneficiaries of the charity have been damaged in an amount presently unknown and which cannot be ascertained without an accounting by Defendants. The facts necessary to ascertain the exact amount of damages to BGC and its public beneficiaries are within the special knowledge of these defendants. BRYANT and/or the Attorney General are entitled to an accounting from Defendants including the disposition of all income and assets which have been improperly diverted from BGC or otherwise squandered through their breach of the duty of care or other wrongful acts.

Wells Fargo Bank Defendants Facts and Claims

73.     On or about January 24, 2012, Plaintiff Ms. Bryant opened a Wells Fargo Bank Account by signing a "signature card" as the only and sole signatory on the account for her unincorporated sole proprietorship organization identified on the signature card as follows:

> KIMBERLY BRYANT
> BLACK GIRLS CODE
> 1725 WASHINGTON ST APT 11
> SAN FRANCISCO, CA  94109

74.     On or about January 24, 2012, the Wells Fargo manager Adam Qadeer requested and obtained an IRS EIN number for Ms. Bryant's sole propriety account and emailed the EIN number to Ms. Bryant, identified on his email as follows:

**Business Banker**

**Wells Fargo Bank, N.A.**
**1560 Van Ness Ave**
**San Francisco, CA 94109**
**MAC A0189-011**
**(415) 396.4595 Main**
**(415) 292.7831 Fax**
**Adam.A.Qadeer@Wellsfargo.com**

The IRS issued the EIN Number as follows:

Date of this notice: 01-25-2012
Employer Identification Number: 45-4347283
BLACK GIRLS CODE
1725 WASHINGTON ST APT 11
SAN FRANCISCO, CA  94109

(Exhibit 1)

75.    BRYANT started BGC as an organization with a small pilot program in 2011 and in the fourth quarter into 2012 she recognized that she really did have something that could scale and grow, and she incorporated the organization in San Francisco in February, January/February 2012.

76.    In 2018, BRYANT selected the current Board of directors and at that time, BGC already had a tremendous number of clients, i.e., Black girls who had enrolled in her program at the approximately 10 active chapter programs in different cities including the Bay Area, New York. Houston, Dallas. Los Angeles, Washington, D.C.. Raleigh, North Carolina. Boston. Miami, Florida. Detroit. Chicago. Atlanta, Georgia and Johannesburg. In 2018, BGC had an annual budget of between $2.5 to $4 million dollars.

77.    On or about December 21, 2021 Defendant Board members suspended Ms. Bryant from her position as President of the Board and CEO of the organization,  alleging and publishing to the world wide web malicious and false allegations that Ms. Bryant had engaged in "gross misconduct" and that the "board was investigating gross misconduct" regarding the creation of a "hostile work environment" by "misgendering" a staff member, i.e., referring to the staff member with the pronoun "she" instead of "they." All the published allegations were false, intentional and a pretext for the theft of her BGC Organization and her Wells Fargo bank accounts for the personal gain of Defendants.

78.    On or about February 5, 2022, Defendants, and each of them, conspired to transfer and did transfer BRYANT's Wells Fargo Account which was expressly a sole proprietorship account as BRYANT had never changed the signature card to reflect BGC'S non-profit incorporation. Wells Fargo

Defendants failed to notify BRYANT of this transfer and theft of her account, nor did Wells Fargo Defendants obtain BRYANT's consent to transfer her account nor its access to Defendants.

79.     Investigation of Defendant Wells Fargo policy and rules pertaining to transferring, and or making accounts accessible to persons other than those on the signature card holder shows that in order to change the signature authority on a business account, the new signatories would need to produce a primary form of ID, e.g., a Driver's License and a secondary form of ID, e.g., a debit or credit card.  After the individuals' identity is established, the Bank would require the new signatories to sign the Bank's Addendum form called "Certificate of Authority."  Notice is then given to the original signature card holder of the account.

80.     On or about August 8, 2022, Ms. Bryant visited the Wells Fargo and the bank refused to give her the signature card she signed opening her BGC Account. The bank manager gave her a letter stating:

KIMBERLY BRYANT

Wells Fargo Bank
1560 Van Ness Ave
San Francisco Ca 94109

To whom this may concern:

During Mrs. Bryant's visit <u>she requested for signature cards</u> and records of Wells Fargo account <u>we are unable to provide records</u> currently and require additional research in order to provide any legal documents.

We are more then willing to contact our legal team within business banking hours and get back to Mrs., Bryant at a later time and date.

Dep Pham
Branch Manager
Wells Fargo Bank

(Exhibit 2)

81.     At present, the BGC Board has taken control of BRYANT's bank accounts and removed her access. The account contains approximately $38 Million of donated charitable funds which are no longer monitored and are in the Board's control who have expressed their desire to use the donated funds to invest in business ventures in which they have controlling interest. Currently, there is absolutely no oversight of the actions taken by the current board of directors.

82.    In or about July 2021, HILES embarked on a campaign of retaliation against BRYANT by initiating the suspension of BRYANT from her employment as BGC'S CEO. HILES unrelentingly pushed the Board to enter into a business relationship with Udemy, an on-line educational resource business. BRYANT objected, citing that BGC was already in a business relationship with Coursera, a direct competitor of Udemy, and to enter into the relationship with Udemy would create a conflict of interest because HILES had a financial interest in Udemy. Furthermore, HILES knew that Udemy had announced it was soon to IPO.  BRYANT complained and in good faith believed that HILES was engaging in "self-dealing" which was in direct violation of State and federal laws, rules and regulations. HILES and BGC Defendants, and each of them, retaliated against BRYANT by suspending her employment in violation of Labor Code section 1102.5

83.    BRYANT did not give permission to Defendant Wells Fargo to release control of her account; Defendant Wells Fargo granted BGC Defendants access to her accounts without express permission as the account holder. On information and belief, BGC Defendants have spent over $2,000,000 of donors' funds since they suspended BRYANT. Hence, this Complaint specifically requests this honorable Court for emergency Order to Show Caused directed to BGC Defendants to show caused why a Temporary Restraining Order, an injunction, should not issue to protect the donated funds and enjoin any and all BGC board meetings until further order of court and for an accounting of all donors' funds.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF RIGHT TO FINANCIAL PRIVACY ACT**
**(Against All Defendants)**

84.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this cause of action.

85.    Defendant Wells Fargo violated BRYANT'S privacy as provided under the Right to Financial Privacy Act (RFPA), 12 U.S.C. § 3401 et seq., by breaching contractual obligations to BRYANT when transferring BRYANT's bank account to the BGC Defendants. The RFPA prohibits the disclosure of records of a customer of a financial institution. Customers are defined as persons using the institution's services and is limited to individuals or a partnership of fewer than five individuals. 12 U.S.C. § 3401(4) and (5).

86.     Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

87.     Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them, except BGC.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

<u>**FIFTH CAUSE OF ACTION**</u>
**INVASION OF PRIVACY**
**VIOLATION OF CALIFORNIA CONSTITUTION ART. I, § 1**
**Intrusion into Private Affairs**
**(Against All Defendants)**

88.     BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

89.     California Constitution Article I Section 1 provides: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy.

90.     Defendants, and each of them at all relevant times knew that BRYANT enjoyed and had a reasonable expectation of privacy in her financial affairs, and especially in her BGC Wells Fargo bank account that she had worked diligently for years to grow for the benefit of BGC.

91.     Defendants and each of them intentionally intruded in on her right of financial privacy by fraudulently transferring her Wells Fargo bank account to Defendants BGC. Defendants' intrusion would be highly offensive to any reasonable person.

92.     Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

93.     Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them, except BGC.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**SIXTH CAUSE OF ACTION**
**WHISTLEBLOWER LIABILITY**
**VIOLATION OF CALIFORNIA LABOR CODE § 1102.5**
**(Against Employer BGC Defendants)**

94.     BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

95.     California Labor Code § 1102.5 states, in pertinent part:

(a) An employer may not make, adopt, or enforce any rule, regulation, or policy preventing an employee from disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

(d) An employer may not retaliate against an employee for having exercised his or her rights under subdivision (a), (b), or (c) in any former employment.

(e) A report made by an employee of a government agency to his or her employer is a disclosure of information to a government or law enforcement agency pursuant to subdivisions (a) and (b).

96.     In or about July 2021, Defendants embarked on a campaign of retaliation against BRYANT by initiating her suspension as CEO of BGC. Defendant HILES was unrelenting in her attempts to pushing the organization into entering into a business relationship with Udemy, an on-line educational resource business. BRYANT objected citing to the well acknowledged fact that BGC was already in a business relationship with Coursera, a direct competitor of Udemy, and to enter into this new relationship with Udemy would create a clear conflict of interest on account that HILES had a financial interest in Udemy. Furthermore, Defendant HILES knew that Udemy had announced it was soon to engage in the IPO offering process. BRYANT voiced considerable concerns with HILES proposal as she believed that in

21

good faith HILES was engaging in "self-dealing" that was in express violation of State and federal laws, rules and regulations. In an email exchange between HILES, BROWN-PHILPOT, and BRYANT, BRYANT warned HILES of the potential conflict of interest in this matter and restated her fiduciary duty as a board member to not violate our governance laws in this area.  BROWN-PHILPOT was witness to this direct exchange between HILES and BRYANT.  Further BRYANT raised this issue of HILES' conflict of interest in a memorandum sent to the full board and read to them during a special board meeting on October 5, 2021. HILES and BGC Defendants, and each of them, subsequently retaliated against BRYANT by suspending her employment in violation of Labor Code section 1102.5.

97.     Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**SEVENTH CAUSE OF ACTION**
**NEGLIGENCE**
**(Against All Defendants)**

98.     BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

99.     Defendants, and each of them, breached a duty of care by invading BRYANT's privacy and on account of said negligence caused BRYANT foreseeable harm.

100.     Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**EIGHTH CAUSE OF ACTION**
**NEGLIGENCE PER SE**
**(Against All Defendants)**

101.     BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

102.     Defendants, and each of them are negligent per se on account of violated statutory law. Defendant Wells Fargo violated BRYANT'S privacy as provided her under the Right to Financial Privacy Act

(RFPA), 12 U.S.C.S. § 3401 et seq., by breaching contractual obligations to Plaintiff in transferring BRYANT's bank account to the BGC Defendants. The RFPA prohibits the disclosure of records of a customer of a financial institution. Customers are defined as persons using the institution's services and is limited to individuals or a partnership of fewer than five individuals. 12 U.S.C. § 3401(4) and (5).

103.    Defendants' illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

104.    Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them, except BGC.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**NINTH CAUSE OF ACTION**
**INTRUSION UPON SECLUSION**
**Intrusion Into Private Affairs**
**(Against All Defendants)**

105.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

106.    Defendants, and each of them, at all relevant times knew that BRYANT enjoyed and had a constitutionally protected reasonable expectation of privacy in her financial affairs with respect to her BGC Wells Fargo bank account which she had considerably grown for the immeasurable benefit of BGC's community of Black women.

107.    Defendants and each of them intentionally intruded upon BRYANT's right to financial privacy by fraudulently transferring her Wells Fargo bank account to Defendants BGC. Defendants' intrusion would be highly offensive to any reasonable person.

108.    Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

109.    Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them except BGC.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

## TENTH CAUSE OF ACTION
### CONSPIRACY
**(Against All Defendants)**

110.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

111.    As the foregoing allegations make plain, Defendants, and each of them agreed, planned, and took overt acts in furtherance of their conspiracy to transfer BRYANT's Wells Fargo bank account to BGC Defendants.

112.    Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

113.    Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

## ELEVENTH CAUSE OF ACTION
### TORTIOUS INTERFERENCE WITH BUSINESS PROSPECTIVE
#### Intentional Interference with Prospective Economic Relations
**(Against All Defendants)**

114.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

115.    Defendants, and each of them, intentionally interfered with an economic relationship between BRYANT and Wells Fargo resulting in economic harm to BRYANT.

116.    Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

117.    Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them except BGC.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**TWELFTH CAUSE OF ACTION**
**TORTIOUS INFERENCE WITH BUSINESS ADVANTAGE**
**(Against All Defendants)**

118.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this Cause of Action.

119.    Defendants, and each of them, intentionally interfered with BRYANT's business advantage, causing her economic damage, harm and injuries.

120.    Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

121.    Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**THIRTEENTH CAUSE OF ACTION**
**FOR DEFAMATION AT COMMON LAW AND CIVIL CODE 46**
**SLANDER, FALSE AND UNPRIVILEGED PUBLICATIONS**
**(Against All Defendants)**

122.    BRYANT incorporates the allegations asserted above and re-alleges them as though repeated in full in this cause of action.

123.    On information and belief, BGC, HILES, and BROWN-PHILPOT intentionally communicated the above alleged specific false statements about BRYANT to various media outlets, including Business Insider, with knowledge that these statements were intended for publication.

124.    The statements made by BGC, HILES, and BROWN-PHILPOT were false. At the time these statements were made, BGC's Board had not (1) authorized an investigation into BRYANT's alleged misconduct, (2) had not yet received nor devised "serious allegations" of misconduct by BRYANT, and (3) knew that BRYANT had not engaged in any misconduct or impropriety. The statements that BGC, HILES, and BROWN-PHILPOT disseminated were themselves false statements of fact that falsely cast BRYANT's professionalism, leadership, and her ability to work with others in a highly negative light. BGC, HILES, and BROWN-PHILPOT made these statements with actual malice – i.e. with knowledge of their falsity, or, alternatively, with a reckless disregard for their falsity.

125.   BGC, HILES, and BROWN-PHILPOT made these statements without justification nor privilege. The above-described statements convey a defamatory meaning. They detrimentally harm BRYANT's reputation and standing in the communities in which she operates.

126.   BGC, HILES, and BROWN-PHILPOT's expected and intended that their defamatory statements would injure BRYANT economically, including the thwarting of BRYANT'S ability to hold executive leadership positions in future business and charitable ventures.

127.   Defendants illegal conduct was a direct and proximate cause of damage, injuries and harm to BRYANT, including, but not limited to pain, anxiety, mental and emotional distress, fear, humiliation, damage to self-image, damage to career, inconvenience, and suffering.

128.   Defendants illegal conduct was intentional, malicious and showed a conscious disregard of the rights and health of BRYANT entitling her to punitive damages against Defendants, and each of them except BGC.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

**REQUEST FOR ORDER TO SHOW CAUSE**
**WHY AN INJUNCTION SHOULD NOT ISSUE**
**(AGAINST BGC DEFENDANTS)**

129.   PLAINTIFF hereby incorporates herein by this reference all the preceding paragraphs of this complaint as though those allegations are set forth here in full.

130.   Federal Rule 65, Injunctions and Restraining Orders, provides:

(a) preliminary injunction. (1) notice. the court may issue a preliminary injunction only on notice to the adverse party. (2) consolidating the hearing with the trial on the merits. before or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing. even when consolidation is not ordered, evidence that is received on the motion and that would be admissible at trial becomes part of the trial record and need not be repeated at trial. but the court must preserve any party's right to a jury trial.

(b) temporary restraining order.  (1) issuing without notice. the court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if: (a) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

131.    DEFENDANTS violated BRYANT's State constitutional rights to privacy that has resulted in wasting and improperly spending donors' funds. On reliable information and belief, since December 2021, BGC Defendants have spent approximately $2,000,000 of BGC donors' funds to support HILES attempts to remove BRYANT as founder of the organization and continues to do unabatedly without oversight. Despite repeated requests from BRYANT and board member Dr. Sylvia Wilson-Thomas since January 2022 HILES and members of the "special committee" have repeatedly refused to release standard financial records to members of the board such as a -budget vs actuals report, profit and loss statement YTD, financial statement of activity report, quarterly income and expense statements, or a standard balance sheet. Acting on behalf of HILES defendant's counsel has refused to provide these financial records to BGC board members without signing a confidentiality agreement despite the repeated request from BRYANT and Dr. Sylvia Wilson-Thomas to review these standard documents so that they may perform their fiduciary duties of care as board members and stewards of organizational donor funds.

132.    This Court's intervention is urgently needed to stop the hemorrhaging of BGC donors' funds.

133.    DEFENDANTS' illegal conduct has caused, and is causing irreparable injury, loss and damage to BRYANT, including damage to her reputation and standing in the community. Money damages are insufficient to cure the harms, damages and injuries that BRYANT has suffered and continues to suffer. Injunctive relief is required to restore BRYANT to her positions on the BGC's Board, pending the trial on the merits in this matter. BRYANT will suffer irreparable injury or injuries for which there are no adequate remedies at law for the loss of her position as CEO and president of the non-profit that she created.

134.    It is hereby requested that this Court issue an Order to Show Cause for Defendants to show cause why a permanent injunction should not be issued that would restore BRYANT to her elected employment position as CEO and president of BGC.

Wherefore, Plaintiff prays judgment as hereinafter set forth.

## PUNITIVE DAMAGES

135.    BRYANT hereby incorporates herein by this reference all the preceding paragraphs of this complaint as though those allegations are set forth here in full.

136.    Defendants' acts, as alleged herein, as to all causes of action, were intentional, outrageous,

despicable, oppressive, fraudulent, and done with ill will and intent to injure BRYANT and to cause her mental anguish, anxiety, and distress. Defendants' acts were done in conscious disregard of the risk of severe emotional harm to BRYANT and with the intent to injure, constituting oppression, fraud, and malice under California civil code §3294, that reasonably entitled BRYANT to punitive damages against all defendants except BGC.

### PRAYER FOR RELIEF

WHEREFORE, BRYANT prays for relief as follows:

1.   For an Order to Show Cause directed to BGC Defendants to show cause why an injunction should not issues enjoining all BGC board meetings until further order of this Court, as well as require an accounting of all BGC donors' funds;

2.   For general, special, direct, compensatory, damages according to proof;

3.   For punitive damages in the amount of $3,000,000.00 against each Defendant, except BGC. or according to proof at trial;

4.   That an order issue directing that Defendants and each of them, render to the court and to the Attorney General a full and complete accounting of the financial activities and condition of BGC from January of 2020 to the present;

5.   For damages resulting from the breaches of fiduciary duty of all Defendants in an amount to be determined following trial;

6.   For attorneys' fees and costs as authorized by law;

7.   A Court ordered permanent removal of Defendants' HILES, BROWN-PHILPOT, WHITES from BGC's Board and to ban them from serving in any fiduciary capacity thereunder, pursuant to Corporations Code section 5223; and

8.   For such other and further relief as the Court deems just and proper.

### JURY TRIAL DEMANDED

Dated: August 11, 2022                    **LAW OFFICES OF BONNER & BONNER**

                                          /s/ *Charles A. Bonner*
                                          CHARLES A. BONNER
                                          Attorney for Plaintiff

# EXHIBIT 1

 DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH   45999-0023

Date of this notice:  01-25-2012

Employer Identification Number:
45-4347283

Form:  SS-4

Number of this notice:  CP 575 E

BLACK GIRLS CODE
1725 WASHINGTON ST APT 11
SAN FRANCISCO, CA  94109

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.


WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

      Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 45-4347283.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

      When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

      Assigning an EIN does not grant tax-exempt status to non-profit organizations.
Publication 557, *Tax Exempt Status for Your Organization*, has details on the
application process, as well as information on returns you may need to file.  To apply
for formal recognition of tax-exempt status, most organizations will need to complete
either Form 1023, *Application for Recognition of Exemption Under Section 501(c)(3) of
the Internal Revenue Code*, or Form 1024, *Application for Recognition of Exemption
Under Section 501(a)*.  Submit the completed form, all applicable attachments, and the
required user fee to:

Internal Revenue Service
PO Box 12192
Covington, KY  41012-0192

      The Pension Protection Act of 2006 contains numerous changes to the tax law
provisions affecting tax-exempt organizations, including an annual electronic
notification requirement (Form 990-N) for organizations not required to file an annual
information return (Form 990 or Form 990-EZ).  Additionally, if you are required to
file an annual information return, you may be required to file it electronically.
Please refer to the Charities & Non-Profits page at www.irs.gov for the most current
information on your filing requirements and on provisions of the Pension Protection
Act of 2006 that may affect you.

      To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

(IRS USE ONLY)    575E              01-25-2012  BLAC  O  9999999999  SS-4

**IMPORTANT REMINDERS**:

* Keep a copy of this notice in your permanent records. **This notice is issued only one time and the IRS will not be able to generate a duplicate copy for you.**

* Use this EIN and your name exactly as they appear at the top of this notice on all your federal tax forms.

* Refer to this EIN on your tax-related correspondence and documents.

* Provide future officers of your organization with a copy of this notice.

If you have questions about your EIN, you can call us at the phone number or write to us at the address shown at the top of this notice.  If you write, please tear off the stub at the bottom of this notice and send it along with your letter.  If you do not need to write us, do not complete and return the stub.  Thank you for your cooperation.

                    Keep this part for your records.       CP 575 E (Rev. 7-2007)

---------------------------------------------------------------------------------------

     Return this part with any correspondence
     so we may identify your account.  Please                          CP 575 E
     correct any errors in your name or address.

                                                              9999999999


     Your Telephone Number  Best Time to Call  DATE OF THIS NOTICE:  01-25-2012
     (     )    -                              EMPLOYER IDENTIFICATION NUMBER:  45-4347283
     _____    _____   FORM:  SS-4            NOBOD



INTERNAL REVENUE SERVICE                       BLACK GIRLS CODE
CINCINNATI  OH   45999-0023                    1725 WASHINGTON ST APT 11
|ılılılılılılılılılılılılılılılılılılılı|      SAN FRANCISCO, CA  94109

# EXHIBIT 2



Van Ness California
MAC A0189-011
1560 Van Ness Avenue
San Francisco, CA 94109

Tel: 415 396 4595
Fax: 415 292 7831

KIMBERLY BRYANT

Wells Fargo Bank

1560 Van Ness Ave

San Francisco Ca 94109

To whom this may concern

During Mrs. Bryant's visit she requested for signature cards and records of Wells Fargo account we are
unable to provide records currently and require additional research in order to provide any legal
documents.

We are more then willing to contact our legal team within business banking hours and get back to Mrs.,
Bryant at a later time and date.

Dep Pham

Branch Manager

Wells Fargo Bank

Together we'll go far

# EXHIBIT 3

**Memorandum**                                                           **October 5, 2021**


To:     Heather Hiles (*Interim* Board Treasurer)
        Stacy Philpot (General Board Member)
        Dr. Robert Simmons (General Board Member)
        Sebastien Taveau (General Board Member)
        Dr. Sylvia Thomas (Board Secretary)
        Sherman Whites (General Board Member)


From:   Kimberly Bryant, *Chief Executive Officer and Board President*


Subject: **CEO Statement (Re: Special Board Meeting 10.5.2021 1pm PST)**


Dear BGC Board Members,

In light of the forthcoming *special* BGC board meeting which has been called at the time and date mentioned above, I would like to invoke a point of personal privilege and add the following statement formally to our board records.  This statement is submitted in response to the email correspondence that transpired between various board members and I on September 29th, 2021. In this thread of conversations board member Heather Hiles nominated herself to fill the vacancy of 'interim board chair' following the resignation of former board chair Dr. Stephanie Adams on September 22, 2021.  During these subsequent interchanges I voiced a very strong and resolute opposition to both the manner and nature of the process for nominating an interim board chair, as well as board member Heather Hiles' suitability for the interim board chair position.  While I am appreciative of board member Hiles' service on the BGC board of directors, I cannot in good conscience support her nomination as interim board chair for the reasons noted below:

   ➢  Potential conflict of interest issues
   ➢  Demonstrated inability to act within established board governance protocols
   ➢  Pattern of behavior exhibiting an inability to maintain a 'space safe' from a hostile work environment  in
      board proceedings


I bring forth these concerns with a heavy heart and as something that has been on my spirit since the special board meeting which was convened on July 2, 2021 in response to a series of staff resignations. During this meeting (which was called by me); board member Hiles made several direct remarks which were personally disparaging to me. She questioned my character, ethics, and said things of such an inflammatory nature that then board chair  Dr. Adams asked her to stand down. To be specific she said I didn't care about people amongst many personally defamatory remarks. These direct comments were preceded by Heather's self-initiated and inappropriate meetings with several BGC employees.

As I have reflected on that moment and as a result of it had several subsequent talks with Dr. Adams, I have found it troubling and somewhat hypocritical that Heather was "allowed" to enter this formal board meeting --a space which should pride itself on being collaborative and generative, in such a belittling and verbally berating interaction with me; a fellow board member, the founder and CEO of Black Girls CODE, and a fellow Black woman. During this pointed exchange no board member present, with the exception of Dr. Adams, corrected Heather's combative behavior or stepped up in the same corrective manner in which I have perceived to be a response to the email exchanges between myself and other board members last week. I was not protected. My character was maligned. **I was bullied. I was harmed**.

My strong opposition to Heather's nomination to interim board chair is driven by a need to protect this space and more importantly to protect myself and the culture of the organization at its highest levels. The Black woman has been called the most disrespected creature on earth. The reality of this narrative is not lost on me as a Black woman

in a position of  leadership, as evidenced by the personal attacks which transpired during our board meeting on July 2, 2021.

Despite these personal attacks, I sat in the aforementioned meeting and held space while most of the rest of those present were silent. And now you ask me to be in a formal reporting relationship with someone who was abusive to me and be quiet? I am sorry I cannot do that. The current environment on our BGC board is incredibly toxic. Since creating this board three years ago I have sat on many boards and in varying leadership capacities. Our board dynamics are the most dysfunctional, toxic, manipulative, and unsupportive I have ever encountered in a Board capacity. This sentiment has been shared by MANY on the board such as Dr. Adams and Dr. Thomas.

One thing that I made a note of during my time away last week was a need to lean into "*truth telling*" this week before we even approach the notion of reconciliation and before we can effectively execute our board duties and 'the work of BGC'. A core "claim" of the board's actions since July has been centered on an alleged fear or "concern" for the brand/organization. It is not lost on me that there has not been a single *point of inquiry*  requested from me (except from Dr. Adams) to shed light on the internal organizational climate and challenges.  Challenges that are being experienced by so many of my peers in this space. Challenges I know are systemic to BIPOC owned and operated organizations at this moment. Instead there has been an almost immediate indictment and distrust of my leadership skills and judgement as CEO and a stated distrust in my ability to engage in an unbiased assessment of our organizational needs. The board has not entered these conversations from a place of inquiry, curiosity, or collaboration. Instead these conversations have occurred from a place of blame.

I both acknowledge and respect the importance of checks and balances within an organization and welcome this as a necessary component of my leadership accountability. However, as an organization whose stated mission  is to center the voices of Black women and girls through an equity and social justice lens, I am also aware that we must model this behavior from the top down.  We must not "*hold power*" in ways which are shaped by white supremist cultural  models which center 'either / or thinking', patriarchal practices, or false senses of urgency in which we lose sight of the need to "**do no harm**'.  Instead, we must focus on practices which center liberation, equity, and intention. If we want to teach Black girls that Black women have value -- it must begin from the top down.

I believe that we are at a most critical juncture within our organization AND on our board.  I am asking you to be judicious with your power as I am trying to be with mine. In order to move forward together I believe that we must repair this crisis of trust. We must rebuild and realign. We must remove toxicity and reject bullying (whether it surfaces on our teams or on our board of directors).

I don't know how we get to healing on this board. I believe we need external help to heal these wounds. I would ask that we move forward with a mediator **and** a board consultant in this process to allow us to develop more sound board practices that follow our bylaws and model good governance before we move forward with **ANY** board personnel changes. I also ask that we commit with the help of these professionals to developing healthier communication practices both between the board and CEO and protocols to guide healthy board communication with our staff.


With sincere respect and appreciation,

~Kimberly

Kimberly Bryant,
BGC CEO and Founder; President